## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BRIANA JONES,                              )
                                           )
              Plaintiff,                   )
                                           )
-vs-                                       )
                                           )
PRUDENTIAL SECURITY, INC.,                 )
                                           )
              Defendant.                   )

### COMPLAINT AND JURY DEMAND

Plaintiff BRIANA JONES, by and through her attorneys, SALVATORE PRESCOTT & PORTER, PLLC, states as follows:

1.    Briana Jones was just trying to do her job as a security guard for Prudential Security when male coworker Darryl Webster showed her a photo of a penis, repeatedly pressed her to engage in sexual activity with him, and made other sexually charged comments that unnerved and frightened her. Ms. Jones immediately reported Webster's conduct to Prudential Security, but the company did nothing. It performed no investigation and took no steps to protect Ms. Jones.

2.    Forced to continue to work with Webster, and concerned about repeated harassment and retaliation, Ms. Jones reported Webster's

misconduct to the police. When the police reached out to Prudential Security about the matter, Prudential Security finally took action—but instead of holding Webster accountable for his misconduct, the company retaliated against Ms. Jones for making the report at all: they sent her home, gave her a final paycheck, and cut her loose. Ms. Jones lost a job she relied upon to support her minor daughter, simply for taking the position that it is not acceptable to be subjected to sexually harassing behavior in the workplace. And Prudential Security—casting its lot with Webster without doing any investigation—showed how little it cares about protecting its employees or its customers by assigning him, next, to work in a school with teenage children.

3.     No one should lose her job for making a good-faith report of sexual harassment in the workplace. But that is just what happened here. Prudential Security's conduct violated state and federal law and caused Ms. Jones damages.

## PARTIES AND JURISDICTION

4.     Plaintiff Briana Jones resides in Detroit, Michigan.

5. Defendant Prudential Security, Inc. is a Michigan Domestic Profit Corporation, whose principal place of business is 20600 Eureka Road, Taylor, Michigan.

6. Prudential Security was Ms. Jones's employer, within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e; and the Elliott-Larsen Civil Rights Act, MCL § 37.2201.

7. This is an action for sex discrimination and retaliation in violation of Title VII, arising out of Ms. Jones's employment with Prudential Security.

8. This Court has subject-matter jurisdiction over Ms. Jones's federal claims, arising under the laws of the United States, pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this district.

10. On or about November 9, 2016, Ms. Jones filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission. On or about April 4, 2018, Ms. Jones received Notice of Right to Sue from the EEOC, authorizing her to commence this lawsuit.

## FACTUAL ALLEGATIONS

11.    In or about November 2015, Ms. Jones began her employment with Prudential Security. Her most recent position was as a security guard at the Fisher Building in Detroit, Michigan.

12.    During the course of her employment with Prudential Security, Ms. Jones was subjected to unwelcome sexual comments and advances by her coworker, Darryl Webster.

**Webster's sexual harassment of Ms. Jones**

13.    On or around August 27, 2016, a Prudential Security employee named Darryl Webster came to work with the security team at the Fisher Building. Upon his arrival, Ms. Jones welcomed Webster to the site and explained the operational aspects of the security team at the Fisher Building.

14.    Ms. Jones received a text message from her boyfriend, and when she checked it, she noticed Webster peering over her shoulder and trying to see what was on her phone. Ms. Jones was receiving a private communication from her boyfriend on her personal phone, and she was not comfortable with Webster's effort to invade her privacy.

15.     Later in the shift, around 6:30 pm, Webster requested that Ms. Jones show him the building. She agreed.

16.     When they entered the elevator, Webster immediately began talking about himself and other women. Specifically, he said that he met women online, exchanged pictures of a sexual nature with them, and that one woman recently sent him pictures of her private parts.

17.     Webster then told Ms. Jones that he needed to send a picture of his private parts to his online friend. He asked Ms. Jones in substance, "what do women want to see, the length or the width?" Ms. Jones became very uncomfortable, understanding that Webster was referring to his penis. She responded that she did not know.

18.     Webster then flashed his phone at Mr. Jones, showing her what appeared to be a picture of a man's penis.

19.     This conduct was unwelcome and unwarranted, and it made Ms. Jones extremely uncomfortable. Ms. Jones did not want to discuss such matters with her coworker and did not want him to show her a sexually explicit image like the one Webster showed her. Webster's behavior also made Ms. Jones anxious, particularly given that they were alone when he was engaging in such conduct.

20.     Ms. Jones and Webster then exited the elevator, and Ms. Jones attempted to move on with showing him the building. Webster, however, continued with his sexually suggestive comments, remarking that "someone is doing more than working up here," in reference to an old wooden table he saw on the thirteenth floor of the building. Ms. Jones understood this comment to be suggesting that people had sex on the table.

21.     The harassment persisted and escalated. As Ms. Jones and Webster proceeded to the elevator, he remarked, "Are you sure you don't want to let me take you on the table? Could I give you head? When's the last time you got some good head?" These inappropriate sexual propositions were completely unwelcome and unwarranted. Ms. Jones was trying to do her job and show a new security guard around the building. Webster's aggressive and inappropriate behavior created an environment that made it difficult for Ms. Jones to feel safe in carrying out her job responsibilities.

22.     Ms. Jones then stepped into the elevator, but Webster obstructed the elevator door to prevent it from closing. Despite Ms. Jones's evident apprehension, he persisted with the unwelcome sexual

propositions, asking her, in substance, "You sure? Are you sure you don't want to go up there?" Ms. Jones said no.

23.    Once in the elevator, Webster continued, asking Ms. Jones if she had a picture of her "cookie" on her phone, referring to her vagina. Ms. Jones told him no.

24.    Ms. Jones was desperate to get away from Webster as soon as possible. She was shocked, upset, and uncomfortable.

25.    When they arrived at the main level of the building, Webster asked Ms. Jones if he could hug her. She said no.

**Ms. Jones reported the misconduct immediately**

26.    As soon as Webster left the immediate area, Ms. Jones confided in another male coworker about what had just occurred. They discussed whether Ms. Jones should report the situation to management. Ms. Jones was embarrassed and uncomfortable, and as one of the few female security guards, she worried about her male coworkers finding out about what happened.

27.    Nonetheless, Ms. Jones was concerned that the harassment might escalate if she did not report it, so she decided to speak with a supervisor about what had occurred.

28.     The next day, Ms. Jones reported the harassment to the morning supervisor. The supervisor then called Prudential Security Operations Manager Gerald Collins and explained the situation to him. Collins never requested to speak with Ms. Jones, despite his knowledge that she was with the morning supervisor at the time of the call. The morning supervisor indicated to Ms. Jones that the only thing Collins said was that he never had a similar incident involving Webster. Ms. Jones felt that Collins had decided he did not believe her before even speaking to her.

29.     Ms. Jones was instructed to call Collins the next Monday at 10 am. Ms. Jones called, but Collins did not answer. When he eventually called her back, he said he would investigate her complaint and get back to her in a few days. However, an entire week went by without any response from Collins.

30.     During this time, Ms. Jones was forced to continue to work with Webster at the Fisher Building. No one at Prudential Security took any measures to separate him from her or to protect her from further harassment. As a result, Ms. Jones was distressed and anxious.

31.    Ms. Jones did her best to avoid Webster, but knowing he was at the site, that she had reported his conduct, and that he could easily come upon her alone in the building at any time made her extremely uncomfortable. Ms. Jones was also concerned about being subjected to further harassment.

32.    Having heard nothing from management and being subjected to the continuous presence of Webster at her workplace, Ms. Jones decided to file a police report with the Detroit Police Department. She did so on or about September 4, 2016. Without Ms. Jones's knowledge, a police officer provided a copy of Ms. Jones's report to the Fisher Building's management, who in turn submitted it to Prudential Security.

**Prudential Security constructively terminates Ms. Jones**

33.    On Wednesday, September 7, 2016, when Ms. Jones appeared for work, the morning supervisor told her that Collins had instructed by text message that Ms. Jones was not permitted to work. The supervisor further informed Ms. Jones that she would be off for two days.

34.    On Friday, instead of being permitted to return to work, Ms. Jones was instructed to pick up her pay from the Prudential Security's headquarters. While at the Prudential Security's headquarters, Ms.

Jones spoke with Collins about her return to work. Collins stated that Ms. Jones needed to meet with Collins's boss, who was out of town. Collins also stated he would have a placement for Ms. Jones by Monday, September 12, 2016.

35.    Ms. Jones inquired multiple times about the meeting and her placement. She sent multiple text messages to Collins. However, Prudential Security's only response was that more information about the incident was needed before Ms. Jones could be placed. Prudential Security never interviewed Ms. Jones about the incident with Webster and never permitted her to return to work. Instead, the company collected her uniform and asked her to sign a paper regarding the end of her employment at Prudential Security.

36.    Prudential Security did, however, permit Webster to continue to work. Upon information and belief, not only was Webster allowed to continue to work as a security guard without consequence, but Prudential Security also chose to place him in a school setting, working around children.

## COUNT I
## Sex Discrimination
## Title VII

37.    Plaintiff incorporates all previous paragraphs of this
Complaint here.

38.    Ms. Jones is a woman. Upon information and belief, she was
one of the few female security guards employed by Prudential Security.

39.    At all times material to this Complaint, Ms. Jones was an
employee and Prudential Security was her employer, covered by and
within the meaning of Title VII of the Civil Rights Act.

40.    Title VII provides that employers may not discriminate
against any individual with respect to her compensation, terms,
conditions, or privileges of employment because of the individual's sex.

41.    The conduct that Prudential Security and its employee,
Webster, engaged in, as described above, was on the basis of, and because
of, Ms. Jones's sex.

42.    During the course of her employment with Prudential
Security, Ms. Jones was subjected to unwanted comments and conduct of
an offensive and sexual nature resulting in the creation of a hostile and
intimidating work environment. Instead of taking steps to protect Ms.

Jones, investigate her complaint, and punish her harasser for his behavior, Prudential Security retaliated against Ms. Jones by constructively discharging her.

43.     Prudential Security's response to the unwanted sexual conduct outlined above manifests indifference or unreasonableness in light of the facts the employer knew or should have known, as outlined above, specifically, the acts of:

a. Failing to provide Ms. Jones with employment conditions and relationships where she could safely work, free from sexual harassment;

b. Failing to respond promptly to Ms. Jones's sexual-harassment complaint;

c. Failing thoroughly to investigate Ms. Jones's sexual-harassment complaint;

d. Failing to take appropriate action when it knew or should have known of the sexual harassment;

e. Failing to discharge, suspend, reprimand, or otherwise discipline employees who perpetrated, acquiesced in, or ignored the sexual harassment;

f. Retaliating against Ms. Jones for complaining about the sexual harassment and for asserting her civil rights, specifically by constructively discharging Ms. Jones for reporting the sexual harassment to Prudential Security's management and the police.

44.    The actions of Prudential Security, it agents, representatives, and employees were intentional and willful, in deliberate disregard of, and with reckless indifference to Ms. Jones's rights and sensibilities.

45.    As a direct and proximate result of Prudential Security's wrongful acts and omissions, Ms. Jones has sustained injuries and damages including but not limited to loss of earnings and earning capacity; loss of career opportunities; mental anguish and emotional distress, humiliation and embarrassment; loss of professional reputation; and the loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

## COUNT II
### Retaliation
### Title VII

46.    Plaintiff incorporates all previous paragraphs of this Complaint here.

47.   Ms. Jones engaged in protected activity when she made complaints to the police and to Prudential Security, including to her supervisor and Operations Manager Collins, about the sexual harassment she was subjected to by her coworker.

48.   Prudential Security retaliated against Ms. Jones by the conduct described above, including but not limited to: ignoring her complaints; failing to discipline the male coworker who harassed her; and constructively discharging her in response to her complaint of being subjected to sexual harassment by a coworker.

49.   Prudential Security's actions were intentional, willful, in deliberate disregard of, and with reckless indifference to Ms. Jones's rights.

50.   As a direct and proximate result of those actions, the terms, conditions, and privileges of Ms. Jones's employment were adversely affected.

51.   As a further direct and proximate result of the Prudential Security's wrongful acts and omissions, Ms. Jones has sustained injuries and damages, including, but not limited to, economic loss, loss of earnings and earning capacity, mental and emotional distress, including anxiety,

mental anguish, humiliation, embarrassment, damage to her good name and professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of Ms. Jones's choice.

**<u>Relief Requested</u>**

For all the foregoing reasons, Plaintiff demands judgment against Defendant as follows:

A.    **<u>Legal Relief</u>**

    1. Compensatory damages in whatever amount Plaintiff is found to be entitled;

    2. Exemplary damages in whatever amount Plaintiff is found to be entitled; and

    3. Punitive damages in whatever amount Plaintiff is found to be entitled.

B.    **<u>Equitable Relief</u>**

    1. An order from this Court enjoining further violation of the law;

    2. An award of interest, costs, and reasonable attorneys' fees; and

15

3. Whatever other equitable request appears appropriate at

the time of final judgment.

                                    Respectfully submitted,
                                    SALVATORE PRESCOTT &
                                    PORTER, PLLC

Dated:   June 21, 2018

                                    s/ Julie B. Porter
                                    Julie B. Porter (P81386)
                                    1010 Davis Street
                                    Evanston, IL 60201
                                    P: (312) 283-5711
                                    F: (312) 724-8353
                                    porter@spplawyers.com

                                    *Attorney for Plaintiff*

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COMES the Plaintiff, by and through her attorneys, SALVATORE PRESCOTT & PORTER, PLLC, and hereby demands a trial by jury in the above entitled cause of action.


Dated:   June 21, 2018                     Respectfully submitted,
                                            SALVATORE PRESCOTT &
                                            PORTER, PLLC

                                            s/ Julie B. Porter
                                            Julie B. Porter (P81386)
                                            1010 Davos Street
                                            Evanston, IL 60201
                                            P: (312) 283-5711
                                            F: (312) 724-8353
                                            porter@spplawyers.com

                                            *Attorney for Plaintiff*

17