**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRIANA JONES,               )
                               )
        Plaintiff,       )
                               )
-vs-                     )     Case No. 2:18-cv-11960-MAG-EAS
                               )
PRUDENTIAL SECURITY, INC.,   )     Hon. Mark A. Goldsmith
                               )
        Defendant.     )

**JOINT FINAL PRETRIAL ORDER**

This order is being entered based on a stipulated proposed order jointly submitted by the parties, with minor modifications, as set out below.

1.    **Jurisdiction**

The Court has subject-matter jurisdiction over Ms. Jones's Title VII claims, which are federal claims arising under the laws of the United States, pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Ms. Jones's claims arising under Michigan law, pursuant to 28 U.S.C. § 1367.

Jurisdiction is not contested by any party.

2.    **Trial**

The case is being tried as a Zoom jury trial, with the consent of the parties.

3.    **Statement of Claims and Defenses**

A. **Plaintiff's Claims**

Plaintiff brings claims for: (i) sex discrimination under Title VII; (ii) retaliation

1

under Title VII; (iii) sex discrimination under ELCRA; and (iv) retaliation under ELCRA. As to each of these claims, Plaintiff states: (i) the elements of the claim; (ii) the principal facts in support of the claim, both as to liability and damages, indicating whether the fact is contested or uncontested; and (iii) the controlling or most appropriate legal authority in support of every element of the claim.

### (1) Sex discrimination under Title VII

The elements of Plaintiff's sexual harassment claim under Title VII are:

1. Plaintiff was an employee of Prudential Security;

2. Plaintiff was subjected to unwelcome sexual harassment;

3. The harassment was based on sex;

4. The sexual harassment created a hostile work environment, meaning that it was sufficiently severe or pervasive that a reasonable person in plaintiff's position would find plaintiff's work environment to be hostile or abusive;

5. Plaintiff herself believed that the harassment created an abusive working environment; and

6. Defendant is liable, meaning that it knew or should have known about the conduct and did not take reasonable steps to correct the situation or to prevent harassment from recurring.

*Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724 (6th Cir. 2006). The *Randolph* case, and the authorities cited in Plaintiff's response to Defendant's motion for summary judgment, support each element of Plaintiff's claim.

The principal facts supporting this claim are that, while working with Plaintiff at the Fisher Building on August 27, 2016, Plaintiff's coworker Darryl Webster questioned Plaintiff about whether women preferred to see the length or width of a penis in photos; showed Plaintiff a picture of his penis; asked if she had pictures of her vagina on her phone; referred to other people engaging in sex at the Fisher Building; asked if he could engage in sexual intercourse with plaintiff, asked if he could perform oral sex on Plaintiff; blocked Plaintiff's attempt to leave on the elevator; and tried to hug Plaintiff. (Contested.) Plaintiff was distraught and afraid. (Contested.) She immediately reported Webster's conduct to a coworker and a supervisor. (Contested.) When Defendant did nothing to protect her, Plaintiff reported Webster's conduct to Detroit Police Department. (Contested.) Defendant continued to do nothing to address Plaintiff's concern, giving lip-service to conducting an "investigation" but doing nothing but taking a self-serving statement from Webster and pushing Plaintiff out of the company. (Contested.) Plaintiff's understanding is that Defendant admits that Plaintiff reported sexual harassment but generally disputes the remaining facts in this paragraph. (Uncontested.)

Regarding back pay, Plaintiff worked for Prudential Security from approximately November 22, 2015 to September 3, 2016. She worked 40 hours per week for Prudential and, since approximately May 20, 2016, was paid $9.00 per hour. The following calculation is approximate:  Defendant contests that any damages are owed in this case.

From September 4 to October 16, 2016, despite her efforts to find other employment, Plaintiff could not find a job. Also, although she requested unemployment payments, such payments were denied. Defendant contests that any damages are owed in this case.  For this six-week period, assuming 40 hours per week at $9.00 per hour, Plaintiff's damages are approximately **$2,160**.  Defendant contests that any damages owed in this case.

On or about October 17, 2016, Plaintiff began employment at an automotive plant. She worked 40 hours per week for the plant at $8.50 per hour until February 1, 2017. Based on the pay differential—for the 15 weeks she worked at the plant, Plaintiff received $.50 less per hour than at Prudential—Ms. Jones has damages of approximately **$300**.  Defendant contests that any damages are owed in this case.

Plaintiff was laid off from the plant and had no work from February 2, 2017 to February 8, 2017. Plaintiff's damages calculation for this period—one week, assuming 40 hours per week at $9.00 per hour—is **$360**.  Defendant contests that any damages are owed in this case.

Plaintiff then secured part-time nursing work at a  healthcare company. Between approximately February 9, 2017 and August 26, 2017, Plaintiff was paid $11.60 per hour for 24 hours of work every two weeks. Thus, for this 28-week period, Plaintiff was paid a total of approximately $3,897. Had she still been working full-time for Prudential at this time—40 hours per week at $9.00 per hour— Plaintiff would have made $10,080. Her damages for this time period are, therefore, **$6,183**.

Defendant contests that any damages are owed in this case.

Beginning August 27, 2017, and continuing to December 25, 2017, Plaintiff worked full-time at the healthcare company, meaning 72 hours every two weeks. Her pay was increased to $13.25 per hour, and on November 22, 2017, her pay was increased again to $13.64 per hour. She does not claim damages for this time period. Between December 26, 2017 and April 22, 2018, Plaintiff was out of work. Her damages for this period (approximately 17 weeks) are **$6,120.**  Defendant contests that any damages are owed in this case.

Between April 23, 2018 and December 1, 2018, Plaintiff worked as a temp at a car manufacturer. She worked approximately 30 hours per week, although the work is irregular, and was paid $15.78 per hour. She does not claim damages for this time period. (Uncontested.)

Plaintiff was off work until January 4, 2019. She returned to work at the car manufacturer at that time and—except for a temporary layoff from March 16, 2020 to June 18, 2020, she continues to work approximately 30-40 hours per week as a temp. Her pay exceeds what she made at Prudential Security. She claims damages of **$4,896** for this time period, based on the period that she was laid off.  Defendant contests that any damages are owed in this case.

Plaintiff's total back pay for September 4, 2016 to present, is approximately **$22,179**.  Defendant contests that any damages are owed in this case.

In addition, Plaintiff seeks compensatory damages for emotional distress, as

well as punitive damages. Under Title VII, because Prudential Security has over 500 employees, Plaintiff is entitled to a compensatory and punitive-damages award up to **$300,000**. 42 U.S.C. § 1981a(b)(3)(D). Defendant contests that any damages are owed in this case.

Finally, Plaintiff seeks prejudgment interest, attorney's fees, and costs. The attorney's fees and costs already far exceed the back pay in this case and will continue to increase as this case approaches trial. Defendant contests that any damages are owed in this case.

### (2) Retaliation under Title VII

The elements of Plaintiff's retaliation claim under Title VII are:

1. Plaintiff complained that she was subjected to sexual harassment, either to Prudential Security, to Detroit Police Department, or to both;

2. Defendant knew that Plaintiff complained that she was subjected to sexual harassment;

3. Defendant subsequently took an adverse, retaliatory action against Plaintiff; and

4. Plaintiff's complaint about sexual harassment and the adverse action were causally connected.

*Randolph*, 453 F.3d at 724. The *Randolph* case, and the authorities cited in Plaintiff's response to Defendant's motion for summary judgment, support each element of Plaintiff's claim.

6

Plaintiff's damages on the retaliation claim are identical to her damages on the discrimination claim, as set forth in (1).

**(3) Sex discrimination under ELCRA**

The analysis for Plaintiff's ELCRA claim is the same as for the Title VII claim, set forth under (1). *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468 (6th Cir. 2012). One exception is that under ELCRA, there is no cap on a compensatory-damages award. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 548 (6th Cir. 2007).

**(4) Retaliation under ELCRA**

The analysis for Plaintiff's ELCRA claim is the same as for the Title VII claim, set forth under (2). *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 614 (6th Cir. 2019). One exception is that under ELCRA, there is no cap on a compensatory-damages award.

**B. Defendant's Defenses**

1.    Plaintiff has no direct evidence of discrimination in this case.

2.    The Defendant had a nondiscriminatory reason for the employment decision.

3.    Plaintiff has no indirect evidence of discrimination in this case and cannot show that she suffered an adverse employment action.

4.    The acts that the Plaintiff complains of against Daryl Webster did not occur.

7

5.    Plaintiff cannot show that it knew or should have known about the conduct and or that Defendant did not take reasonable steps to correct the situation or to prevent harassment from recurring.

6.    Prior to the alleged event, Plaintiff engaged in conduct that was terminable, including sitting on the floor while she was to conduct security and at a separate time observing pornography on her phone.

7.    Plaintiff cannot show retaliation under Title VII or ELCRA. Plaintiff cannot show that she engaged in protected activity. Plaintiff cannot show that the defendant was aware of this activity. Plaintiff cannot show that she was subject to adverse employment action by the defendant. Plaintiff cannot show that there was a causal connection between the protected activity and the adverse employment action.

8.    Plaintiff's damages in this case are limited to a few thousand dollars as further outlined herein.

The Plaintiff cannot show that the Defendant discriminated against her based upon her sex. The Defendant has a non-discriminatory reason for why it removed her from the site location. (Contested.) By Plaintiff's own admission, she was caught sitting on the floor, not working, during her work hours. (Uncontested.) Furthermore, she was observed in front of other security officers looking at pornography. (Contested.) Both incidents, independent of each other, are reasons for her termination. (Contested.) Even presuming the incident with Mr. Webster is true (despite Mr. Webster's denial), Defendant had two independent reasons to terminate

Plaintiff – both of which Plaintiff admits did in fact occur. (Contested.) The burden is now on Plaintiff to show that they were pretextual.

Likewise, Plaintiff cannot show any direct evidence of discrimination.  Under, *Sniecinski*, Defendant had an independent reason for its employment decision. A decision that was independent of the alleged acts of Mr. Webster. Specifically, the Defendant was justified in its actions based on Plaintiff's admissions that she was sitting on the floor and looking at pornography.

Plaintiff has no evidence the Defendant even knew that she had contacted the police department.  (Contested.)  She admits that the officer to whom she made the report informed her that he gave the information to the management or ownership; but not to Prudential. Furthermore, she has no evidence to know when the report was made. (Contested.) Furthermore, she cannot show any casual connection between her employment decision and her complaint to the police department. (Contested.) First, if Defendant did not know of the complaint, how could it have made the decision because of it?  Second, as noted herein, the Defendant had two independent reasons for its decision – Plaintiff's admitted sitting on the floor and looking at pornography on the job site. (Contested.)

Plaintiff was earning approximately $10.00/hour and was only off of work from Prudential for about 6 weeks.  Presuming she worked 40 hours a week her total income would be $2,400.00.

The appropriate analysis for a claim of discrimination under the ELCRA was

outlined by the Michigan Supreme Court in *Sniecinski v. Blue Cross & Shield of Mich.*, 469 Mich 124, 666 NW2d 186 (2003). In *Sniecinski,* the court began its analysis by noting that "Proof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence." *Id.* at 132 (citing *DeBrow v. Century 21 Great Lakes, Inc. (After Remand),* 463 Mich. 534, 539, 620 N.W.2d 836 (2001); *Harrison v. Olde Financial Corp.,* 225 Mich.App. 601, 606-607, 572 N.W.2d 679 (1997)). The court further opined that "[i]n cases involving direct evidence of discrimination, a plaintiff may prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Id.* (citing *Hazle v. Ford Motor Co.,* 464 Mich. 456, 462, 628 N.W.2d 515 (2001)).

The *Sniecinski* court then noted that it relied on the "United States Court of Appeals for the Sixth Circuit's definition of "'direct evidence' as 'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Id.* at 133 (citing *Hazle, supra* at 462, 628 N.W.2d 515, quoting *Jacklyn v. Schering Plough Healthcare Products Sales Corp., 176 F.3d 921*, 926 (C.A.6, 1999); *Harrison, supra* at 610, 572 N.W.2d 679).

Further, as noted in *Sniecinski,*

> [I]n a direct evidence case involving mixed motives, a plaintiff must prove that the defendant's discriminatory animus was more likely than not a "substantial" or "motivating" factor in the decision. In addition, a plaintiff must establish her qualification or other eligibility for the

> position sought and present direct proof that the discriminatory animus was causally related to the adverse decision. Stated another way, a defendant may avoid a finding of liability by proving that it would have made the same decision even if the impermissible consideration had not played a role in the decision.

*Id. (citations omitted).*

The *Sniecinski* court then noted that, when addressing an indirect or circumstantial evidence, a plaintiff must proceed by using the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.* This indirect approach permits a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination. *Id. at 134 (citing DeBrow, supra* at 538, 620 N.W.2d 836.).

To establish a rebuttable prima facie case of discrimination, a plaintiff must present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) her failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination. *Id.* (citing *Hazle, supra* at 463, 628 N.W.2d 515; *Lytle v. Malady (On Rehearing)*, 458 Mich. 153, 172-173, 579 N.W.2d 906 (1998) (opinion by WEAVER, J.); see also *McDonnell Douglas, supra* at 802, 93 S.Ct. 1817.) Once a plaintiff has presented a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

11

*Id. (citing Hazle, supra* at 464, 628 N.W.2d 515; *Lytle, supra* at 173, 579 N.W.2d 906).

Finally, if a defendant produces such evidence, the presumption is rebutted, and the

burden shifts back to the plaintiff to show that the defendant's reasons were not the

true reasons, but a mere pretext for discrimination. *Id. (citing Hazle, supra* at 465-

466, 628 N.W.2d 515; *Lytle, supra* at 174, 579 N.W.2d 906).

Despite use of the direct evidence test or the *McDonnell Douglas* test, a

plaintiff must establish a causal link between the discriminatory animus and the

adverse employment decision. *Id. at 134-35.* Because a prima facie case under the

*McDonnell Douglas* test creates a presumption of unlawful discrimination, causation

is presumed. *Id. at 135* (citing *Texas Dep't of Community Affairs v. Burdine, 450*

*U.S. 248,* 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). A defendant may rebut the

presumption of causation by articulating a legitimate, nondiscriminatory reason for

the employment decision. Under the direct evidence test, a plaintiff must present

direct proof that the discriminatory animus was causally related to the adverse

employment decision. *Id. (citing Price Waterhouse, supra* at 244-24, 109 S.Ct. 1775;

*Harrison, supra* at 612-613, 572 N.W.2d 67).

Similarly, with regard to Title VII discrimination, to establish a *prima facie*

case of unlawful retaliation, a Plaintiff must show one of the following: (1)presenting

direct evidence of discrimination, (2) providing statistical evidence of disparate

treatment, or (3) by presenting circumstantial evidence of discrimination using the

*McDonnell Douglas v. Green* burden shifting analysis.

To establish a claim for a retaliation under Title VII, a Plaintiff must show that she was retaliated against because she opposed a prohibited employment practice—such as racial or sexual harassment—or "because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under Title VII]." See 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation under Title VII, a plaintiff's complaint must show that (1) she engaged in protected activity under Title VII, (2) the defendant was aware of this activity, (3) she was subjected to an adverse employment action by the defendant, and (4) there was a causal connection between the protected activity and the adverse employment action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). A violation of the ELCRA has practically the same requirements *Garg v. Macomb Co. Community Mental Health Servs*., 472 Mich. 263 at 273 (2005).

Plaintiff was earning approximately $10.00/hour and was only off of work from Prudential for about 6 weeks. Presuming she worked 40 hours a week her total income would be $2,400.00.

5.   **Lay Witnesses**

**A. Plaintiff's Witnesses**

1.  Lamont Burke
    Address unknown
    (313) 753-1569

    Burke will testify concerning the business and organizational structure of Prudential Security; his role at Prudential Security; his relationship with Plaintiff; his observations concerning Plaintiff and Webster on August 27,

13

2016; and his communications with Plaintiff and Prudential Security officials concerning Webster's sexual harassment of Plaintiff and Plaintiff's report to Prudential Security and police.

2. Gerald Collins
   c/o Prudential Security

   To the extent Plaintiff calls Collins to testify, she will call him as a hostile witness or a witness identified with an adverse party, pursuant to Federal Rule of Evidence 611(c)(2). Collins will testify concerning the business and organizational structure of Prudential Security; the number of employees at Prudential Security; his role at Prudential Security; his knowledge concerning who at Prudential Security is responsible for investigating sexual-harassment claims; Prudential Security's policies and practices; his knowledge of Plaintiff's sexual-harassment allegation and communications with Plaintiff and others about such allegations; his documentation of his communications with Plaintiff and others concerning Plaintiff's allegations; his text message communications with Plaintiff; the circumstances of Plaintiff's departure from Prudential Security; and Prudential Security's continued employment of Webster.

3. Adam Eason
   c/o Prudential Security

   To the extent Plaintiff calls Eason to testify, she will call him as a hostile witness or a witness identified Eason an adverse party, pursuant to Federal Rule of Evidence 611(c)(2). Eason will testify concerning the business and organizational structure of Prudential Security; his role at Prudential Security; Prudential Security's policies and practices; his knowledge of Plaintiff's sexual-harassment allegation and communications with Plaintiff and others about such allegations; his documentation of his communications with Plaintiff and others concerning Plaintiff's allegations; and Prudential Security's continued employment of Webster.

4. Patricia Howard
   Address unknown
   313-293-2732

   Howard will testify concerning the business and organizational structure of Prudential Security; her role at Prudential Security; her relationship with

Plaintiff; and her communications with Plaintiff and Prudential Security officials concerning Webster's sexual harassment of Plaintiff and Plaintiff's report to police.

5. Briana Jones
   c/o Salvatore Prescott Porter & Porter, PLLC
   1010 Davis Street
   Evanston, IL 60201
   Phone: (312) 283-5711

   Plaintiff will testify about the allegations in her Complaint, including her work for Prudential Security; Webster's sexual harassment of her on August 27, 2016; her report of the misconduct to Prudential Security and to Detroit Police Department; Webster's continued work at the Fisher Building following her report; Prudential Security's failure to protect her in the workplace or take meaningful action on her complaint; her discussions with Prudential Security supervisors about her harassment allegation; the company's actions in removing her from the schedule pending its so-called "investigation" of her allegations, and its supervisors' statements to her that she would be able to return to work after Keywell completed his investigation; Prudential Security's termination of her in retaliation for her sexual-harassment report; damages that Plaintiff incurred, including back pay and emotional distress, and the overall impact on Plaintiff of Prudential Security's misconduct.

6. Matthew Keywell
   c/o Prudential Security

   To the extent Plaintiff calls Keywell to testify, she will call him as a hostile witness or a witness identified with an adverse party, pursuant to Federal Rule of Evidence 611(c)(2). Keywell will testify concerning the business and organizational structure of Prudential Security; the number of employees at Prudential Security; his role at Prudential Security; his knowledge concerning investigation of sexual-harassment claims; Prudential Security's policies and practices with respect to investigating and resolving sexual-harassment allegations involving employees; his knowledge of Plaintiff's sexual-harassment allegation; his purported investigation of Plaintiff's sexual-harassment allegation; his documentation of his purported investigation; the circumstances of Plaintiff's departure from Prudential Security; and Prudential Security's continued employment of Webster.

7. Alexa Moore (Defendant's motions in limine <ECF No. 31 and ECF No. 43> to bar Alexa Moore's testimony remain pending.)
U.S. Equal Employment Opportunity Commission
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 226-4600

Plaintiff may call Moore as a rebuttal witness concerning her interviews of witnesses from Prudential Security.

8. Darryl Webster
c/o Prudential Security

To the extent Plaintiff calls Webster to testify, she will call him as a hostile witness or a witness identified with an adverse party, pursuant to Federal Rule of Evidence 611(c)(2). Webster will testify concerning his interactions with Briana Jones on August 27, 2016 and thereafter; his work at the Fisher Building after August 27, 2016; his understanding of Prudential Security's policies and procedures; his discussions with Prudential Security's supervisors concerning Plaintiff's sexual harassment complaint; and his continued work for the company.

9. Sprint Records Custodian
TBD

To the extent that Defendant does not stipulate to the authenticity and admissibility of Plaintiff's Sprint phone records as a Sprint business record, Plaintiff may call a records custodian from Sprint to lay the appropriate foundation.

## B. Defendant's Witnesses

1. Daryl Webster
May be contacted through Defendant's counsel
18 West Main St.
Milan, MI 48160
(734) 439-8884

Will testify as to (1) his interactions with the Plaintiff; (2) his conversations with the Plaintiff; (3) his observations of the Plaintiff;

16

and (4) the fact that he didn't offer to engage or purport to engage in sex with the Plaintiff.

2.   Matthew Keywell
     May be contacted through Defendant's counsel
     18 West Main St.
     Milan, MI 48160
     (734) 439-8884

     Will testify as to (1) his investigation into this case; (2) his interactions with Daryl Webster, (3) his interactions with Prudential employees; and (4) Defendant's policies and procedures.

3.   Gerald Collins
     May be contacted through Defendant's counsel
     18 West Main St.
     Milan, MI 48160
     (734) 439-8884

     Will testify as to (1) his interactions with the Plaintiff; (2) his conversations with the Plaintiff; (3) his observations of the Plaintiff; and (4) his interactions with Prudential employees; and (5) Defendant's policies and procedures.

4.   Adam Eason
     311 E PHILADELPHIA
     DETROIT, MI 48202

     Will testify as to (1) his interactions with the Plaintiff; (2) his conversations with the Plaintiff; (3) his observations of the Plaintiff; and (4) his interactions with Prudential employees; and (5) Defendant's policies and procedures.

5.   Olivia Keywell (Plaintiff's motion in limine <ECF No. 30> to bar Olivia Keywell's testimony remains pending)
     May be contacted through Defendant's counsel
     18 West Main St.
     Milan, MI 48160
     (734) 439-8884

     Will testify as to (1) her interactions with the Plaintiff; (2) her conversations with the Plaintiff; (3) her observations of the Plaintiff;

(4) her interactions with Prudential employees; and (5) Defendant's policies and procedures.

6.    Brandon Pauldo
May be contacted through Defendant's counsel
18 West Main St.
Milan, MI 48160
(734) 439-8884

Will testify as to (1) his interactions with the Plaintiff; (2) his conversations with the Plaintiff; (3) his observations of the Plaintiff; (4) his interactions with Prudential employees; and (5) Defendant's policies and procedures.

7.    Donald Tremmel (Plaintiff's motion in limine <ECF No. 30> to bar Tremmel's testimony remains pending)
May be contacted through Defendant's counsel
18 West Main St.
Milan, MI 48160
(734) 439-8884

Will testify as to (1) his interactions with the Plaintiff; (2) his conversations with the Plaintiff; (3) his observations of the Plaintiff; (4) his interactions with Prudential employees; and (5) Defendant's policies and procedures.

8.    Lamont Burke
Address unknown
(313) 753-1569

Will testify as to (1) his interactions with the Plaintiff; (2) his conversations with the Plaintiff; (3) his observations of the Plaintiff; and (4) his interactions with Prudential employees.

## 7.    Expert Witnesses

Neither party is calling an expert witness.

## 8.    Depositions

No *de bene esse* depositions were taken in this case.

9.     **Exhibits**

   **A. Plaintiff's Exhibits**

Plaintiff may introduce the following exhibits into evidence in her case-in-chief:

Plaintiff's Exhibit 1:  8-27-16 Incident Report prepared by Plaintiff

Plaintiff's Exhibit 2:  9-4-16 Police Report

Plaintiff's Exhibit 3:  Text messages between Plaintiff and Gerald Collins, 9-9-16 to 9-15-16

Plaintiff's Exhibit 4:  Text messages between Plaintiff and Patricia Howard, 8-28-16 to 9-1-16

Plaintiff's Exhibit 5:  Plaintiff's Sprint Phone Bills, 8-10-16 to 10-9-16

Plaintiff's Exhibit 6:  9-23-16 Separation Form

Plaintiff's Exhibit 7:  9-23-16 Return Uniform Inventory Sheet

This list does not include documents that Plaintiff may use for impeachment purposes or on rebuttal.

   **B. Defendant's Exhibits**

Defendant may introduce the following exhibits into evidence.

1.     The incident report executed by Briana Jones dated August 27, 2016;

2.    The police report issued by the Detroit Police Department;

3.    The witness statement completed by Darryl Webster;

4.    Prudential Security's 'Telephone and Equipment Abuse" policy

5.    Text messages sent by the Plaintiff to representatives of Defendant dated 8/28/16 through 9/1/2016;

6.    Text messages with Donald Tremmel dated 8/25/2016 through 9/8/2016) (*subject of Plaintiff's motion in limine*)

7.    Plaintiff's payroll history

8.    Plaintiff's Equal Employment Opportunity Policy

9.    Plaintiff's personnel file

10.    Deposition transcripts (for impeachment or, depending on trial testimony, portions as substantive evidence)

11.    Responses to written discovery

This list does not include documents that Plaintiff may use for impeachment purposes or on rebuttal. Plaintiff objects that Defendant's exhibits 7, 9, 10, and 11 are insufficiently specific to comply with the Court's directive.

**10.  Evidentiary Issues and Pending Motions**

Plaintiff has filed a motion *in limine*, ECF No. 30, requesting that the Court give a spoliation instruction to the jury and to prevent Defendant from introducing testimony of Olivia Keywell and Donald Tremmel, and text messages between Plaintiff and Donald Tremmel. This motion remains pending.

Defendant objects to the introduction of the EEOC investigation, interviews with witnesses, and any documents produced or related thereto and the testimony of the EEOC investigator in this case. Motions in limine ECF No. 31 and ECF No. 43 have been filed in this case and remain pending.

The motions *in limine* were addressed by the Court's opinion issued on March 23, 2021 (Dkt. 67).

SO ORDERED.

Dated:  April 14, 2021                          s/Mark A. Goldsmith
       Detroit, Michigan                          MARK A. GOLDSMITH
                                     United States District Judge